**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SADIE MAY HALL,**

       **Plaintiff,**

**v.**              **8:18-CV-0049 (NAM/CFH)**

**UNITED STATES OF AMERICA,**

       **Defendant.**
_____

**APPEARANCES:**

Sam A. Elbadawi
Sugarman Law Firm LLP
211 West Jefferson Street
Syracuse, New York 13202
*Attorney for Plaintiff*

William F. Larkin
Office of the United States Attorney
100 South Clinton Street
Syracuse, New York 13261
*Attorney for Defendant*

**Hon. Norman A. Mordue, Senior United States District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I.   INTRODUCTION

  Plaintiff Sadie May Hall brings this negligence action against the United States of America ("Defendant") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. (Dkt. No. 1). Plaintiff alleges that she sustained injury when she fell on a patch of ice in the parking lot at the United States Post Office in Fine, New York. (*Id.*). Now before the Court are the parties' opposing motions for summary judgment, (Dkt. Nos. 19, 20), and their papers in support and opposition, (Dkt. Nos. 22, 24, 26, 27). For the following reasons, Defendant's motion is granted in part and denied in part, and Plaintiff's motion is denied.

## II. BACKGROUND

### A. Slip and Fall Incident

At approximately 4:50 p.m. on December 27, 2016, Plaintiff went to the Post Office in Fine, New York (hereafter, "FPO") to collect mail from her post office box. (Dkt. No. 22-1, ¶ 4).[1] Plaintiff parked near the front entrance and walked inside. (Dkt. No. 22-1, ¶¶ 5–6; Dkt. No. 20-4, p. 9). She was wearing sneakers at the time and did not experience any difficulty walking from her truck. (Dkt. No. 20-3, pp. 18, 23). Plaintiff did not make any observations of the sidewalk or parking lot on her way inside. (*Id.*, p. 23). Approximately two minutes later, after collecting her mail, Plaintiff exited the FPO, taking a different path to her truck. (Dkt. No. 22-1, ¶ 8). As she stepped off the sidewalk, she slipped and fell onto the parking lot, causing injury to her right shoulder. (*Id.*, ¶ 9). Plaintiff recalled that it was "sprinkling" at the time of her fall, and the parking lot was "slippery." (*See* Dkt. No. 20-3, pp. 22, 24, 35). There were no witnesses to her fall. (*Id.*, p. 23). Pictures taken the next day appear to show a light coating of snow on the parking lot. (*See* Dkt. No. 19-8).

### B. Weather Conditions

Plaintiff's meteorological expert, Wayne Mahar, assessed that on December 26, 2016, Fine, New York "saw a light wintry mixture of precipitation, predominantly liquid, develop between 10:00 a.m. and 11:00 a.m., and change rather quickly to all rain in the mid afternoon (or sooner)," and that "[a]ny important, measurable perception ended between 1:00 a.m. and 4:00 a.m. on December 27, 2016." (Dkt. No. 24-4, ¶ 25). He determined that the temperature on December 27th was falling through the morning, and likely "dropped to the freezing mark . . . as early as 9:00 a.m. and as late as 12:00 p.m." (*Id.*, ¶¶ 21–22). He assessed that

---

[1] The United States Postal Service ("USPS") owns the FPO building and adjacent parking lot. (Dkt. No. 22-1, ¶ 2). The FPO's service counter had closed at 12:00 p.m., but the lobby remained open until 7:00 p.m. so postal box customers could collect their mail. (Dkt. No. 19-6, p. 28).

2

temperatures "fell through the afternoon . . . dropping to 28-31 degrees by 4:55 p.m." (*Id.*, ¶ 23). Mr. Mahar explained that "[t]here may have been some spotty, light drizzle or very light, unknown precipitation type that redeveloped . . . in the early afternoon, between 1:00 p.m. and 4:00 p.m. and continued off-and-on . . . into the evening." (*Id.*, ¶ 19). He testified that any precipitation falling at the time of the accident would have been a trace amount, in the form of freezing rain or freezing drizzle. (Dkt. No. 19-11, pp. 70–71). Further, he opined that ice had formed in the parking lot based on the earlier rain and snow melt, and the temperature falling to the freezing mark at midday. (*Id.*, p. 76).

Defendant's meteorological expert, Howard Altschule, assessed that "[f]reezing rain, snow, sleet and rain fell, with some occasional and extended lulls, from approximately 10:32 a.m. on December 26th [ ] through and beyond 11:59 p.m. on December 27th . . . and a light coating of snow, 0.64" of liquid equivalent precipitation, and a coating of ice/glaze less than 1/10th of an inch thick accumulated." (Dkt. No. 19-12, ¶ 29(a)). Mr. Altschule determined that "[t]he air temperature dropped below freezing at approximately 2:42 p.m. on December 27th, [ ] and remained below freezing through and beyond 11:59 p.m. on December 28th . . . ." (*Id.*, ¶ 28). He explained that "[p]uddles/wet surfaces caused by melting snow, and precipitation that was falling on December 26th and 27th . . . froze to ice as air temperatures dropped below freezing at 2:42 p.m.," and "new ice formed between 2:42-5:42 p.m. on December 27th, 2016 (including at the time of the incident)." (*Id.*, ¶ 29(b)). Mr. Altschule assessed that at 4:55 p.m., "light snow was falling, the air temperature was 30 degrees [ ], and ice was actively forming and developing," with "[u]p to a new coating of snow and very slippery/icy conditions . . . on exposed, untreated and undisturbed surfaces at the time of the incident. (*Id.*, ¶ 29(c)). He further opined that "[n]ew ice was actively forming before, during

3

and after the time of the incident . . . as puddles/wet surfaces caused by melting snow that fell on December 26th and 27th underwent a 'flash freeze.'" (*Id.*, ¶ 29(d)).

### C. Defendant's Snow Removal Procedures

Postal employees are generally responsible for maintaining the sidewalk at FPO during the wintertime. (Dkt. No. 19-6, pp. 11–12; Dkt. No. 20-5, pp. 13–14, 17). Specifically, the attending postal clerk is responsible for salting and clearing snow and ice from the sidewalk area outside the entrance to the FPO. (*Id.*). Postal Support Employee ("PSE") Amber Boulden stated that FPO does not have any formally established procedures for snow and ice removal, but she clears the sidewalk "as needed" throughout her shift and before she leaves for the day. (Dkt. No. 19-6, p. 23; *see also* Dkt. No. 20-5, p. 17). She also salts the sidewalk "every day that [she is] at work in the winter." (*Id.*). Employees do not conduct any maintenance of the sidewalk after the FPO closes at 12:00 p.m. (Dkt. No. 20-5, p. 34).

Employees do not salt or remove snow from the parking lot. (Dkt. No. 19-6, p. 12; Dkt. No. 20-5, p. 14). FPO contracted with a local plowing service to remove snow from the parking lot for the 2016/2017 winter season. (Dkt. No. 20-5, pp. 13–14). The plowing service was to plow the parking lot after more than three to four inches of snowfall. (*Id.*, p. 15). The parking lot was not plowed on December 27, 2016. (*Id.*).

## III. LEGAL STANDARDS

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine

4

issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a

genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). Upon cross-motions for summary judgment, the Court must "in each case constru[e] the evidence in the light most favorable to the nonmoving party." *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 621–22 (2d Cir. 2008).

### B. Negligence[2]

To prevail on a claim of negligence under New York law, a plaintiff must prove that: (1) defendant had a duty to the plaintiff to use reasonable care; (2) breach of that duty by the defendant; and (3) injury to the plaintiff. *Ben v. United States*, 160 F. Supp. 3d 460, 477 (N.D.N.Y. 2016) (quoting Restatement (Second) of Torts § 315). "Generally, a landowner owes a duty of care to maintain his or her property in a reasonably safe condition." *Gronski v. County of Monroe*, 18 N.Y.3d 374, 379 (2011). "That duty is premised on the landowner's exercise of control over the property, as 'the person in possession and control of property is best able to identify and prevent any harm to others.'" *Id.* (quoting *Butler v. Rafferty*, 100 N.Y.2d 265, 270 (2003)).

To succeed on a slip-and-fall negligence claim under New York law, a plaintiff "must demonstrate the existence of a dangerous or defective condition and must show either that the defendant 'created a dangerous condition,' or that the defendant 'had actual or constructive knowledge of the condition.'" *Taylor v. Manheim Remarketing, Inc.*, 752 F. App'x 94, 95 (2d Cir. 2019) (quoting *Lemonda v. Sutton*, 268 A.D.2d 383, 384 (1st Dep't 2000)). Alternatively, a court may "impute constructive notice to a party if that party failed to conduct reasonable

---

[2] Under the FTCA, the United States may be liable "if a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Here, the Court must apply New York law because the alleged injury occurred in Fine, New York. *See Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019).

6

inspections of its property and 'a reasonable inspection would have revealed the defective condition.'" *Id.* (quoting *Dufrain v. Hutchings*, 112 A.D.3d 1212, (3d Dep't 2013)). When determining whether a defendant exercised reasonable care as to dangerous conditions consisting of snow and ice, the Court's analysis must be tempered with "an awareness of the realities of the problems caused by winter weather." *Goldman v. State*, 158 A.D.2d 845, 845 (3d Dep't 1990) (quoting *Marcellus v. Littauer Hosp. Assn.*, 145 A.D.2d 680, 681 (3d Dep't 1988)).

## IV. DISCUSSION

The parties have presented a number of theories in support of their competing motions for summary judgment. The Court will address each in turn.

### A. Storm in Progress

First, Defendant argues that it cannot be liable "because [Plaintiff] fell at the FPO during the midst of a winter storm and the 'Storm in Progress Doctrine' precludes her claims." (*See* Dkt. No. 19-2, pp. 13–15). In support of this theory, Defendant asserts that "there is no dispute that freezing rain, snow, sleet and rain fell, with some occasional and extended lulls, from approximately 10:32 a.m. on December 26, 2016 through and beyond 11:59 p.m. on December 27, 2016, and that at the time of plaintiff's fall – 4:55 p.m. on December 27, 2016, light snow was falling, the air temperature was 30 degrees and ice was actively forming and developing before, during, and after the time of her fall." (*Id.*, pp. 14–15). Defendant also argues that, even if there was a lull in precipitation, FPO employees were under no duty "to remove the accumulation of snow or ice before the storm cease[d] in its entirety." (Dkt. No. 22, p. 7).

In response, Plaintiff claims that "the evidence indicates that there was no 'storm' ongoing at the time of [Plaintiff's] accident," and further, even if there was an ongoing storm,

7

"the 'storm in progress' defense does not bar a plaintiff's recovery where her fall was caused by negligence independent of the 'storm.'" (Dkt. No. 20-1, pp. 15–16). She points out that her expert found that any precipitation at the time of the accident was a trace amount, and that even Defendant's expert found that there were "occasional and extended lulls" in precipitation. (Dkt. No. 24-2, pp. 11–12). As to Mr. Mahar, Plaintiff emphasizes his testimony that the last of any measurable precipitation on December 27th fell in the early morning hours, and "although there 'may' have been some light precipitation in the afternoon[,] . . . the amount was merely a trace amount, too small to measure." (*Id.*, p. 12).

Under the storm in progress doctrine, "a property owner will not be held responsible for accidents occurring as a result of the accumulation of snow and ice on its premises until an adequate period of time has passed following the cessation of the storm to allow the owner an opportunity to ameliorate the hazards caused by the storm." *Fisher v. Kasten*, 124 A.D.3d 714, 715 (2d Dep't 2015) (quoting *Rabinowitz v. Marcovecchio*, 119 A.D.3d 762, 762 (2d Dep't 2014)). Further, a landowner's obligation to take reasonable measures to correct storm-created snow and ice conditions does not commence until after the storm has ceased. *See Hilsman v. Sarwil Assocs. L.P.*, 13 A.D.3d 692, 693 (3d Dep't 2004) (collecting cases). Indeed, this defense evolved "in recognition of the realities of problems caused by winter weather, that is, as a common sense rule arising from the fact that snow and ice conditions are unpredictable, natural hazards against which no one can insure and which in their nature cannot immediately be alleviated." *Id.* This affirmative defense is not limited to snow and ice, but has also been extended to cover dangerous conditions caused by sleet and/or freezing rain. *Id.* (citing *Fusco v. Stewart's Ice Cream Co.*, 203 A.D.2d 667, 668 (3d Dep't 1994)).

"A defendant employing the 'storm in progress' defense on summary judgment must show a prima facie entitlement to judgment based on that defense and, if that burden is met, the

opponent of the motion must come forward with competent, admissible evidence establishing the existence of a triable issue of fact." *Sanders v. Wal-Mart Stores, Inc.*, 9 A.D.3d 595, 595 (3d Dep't 2004). In other words, the burden shifts to the plaintiff to raise a triable issue of fact as to either: (1) the existence of the storm; or (2) the existence of a slippery condition prior to the storm at the location where the plaintiff fell, and that the defendant had actual or constructive notice of the pre-existing condition. *See Meyers v. Big Six Towers, Inc.*, 85 A.D.3d 877, 877–78 (2d Dep't 2011).

Here, Defendant has adduced evidence of an active weather event at the time of Plaintiff's accident. Specifically, Mr. Altschule stated that temperatures would have fallen below freezing by 2:42 p.m., and that at 4:55 p.m., "light snow was falling, the air temperature was 30 degrees [ ], and ice was actively forming and developing." (Dkt. No. 19-12, ¶¶ 23, 25). Mr. Altschule added that "[n]ew ice was actively forming before, during, and after the time of the incident on December 27th [ ], as puddles/wet surfaces caused by melting snow . . . underwent a 'flash-freeze.'" (*Id.*, ¶ 29(d)). Further, Mr. Davison, the Postmaster at FPO, testified that it was "icing" on the afternoon of Plaintiff's fall, and that he stayed late that day while waiting for mail carriers that were delayed due to the icy conditions. (Dkt. No. 19-7, p. 32). Based on this evidence, Defendant has made a prima facie showing to invoke the storm in progress doctrine.

The burden then shifts to Plaintiff to raise a triable issue of fact. To do so, Plaintiff relies on the opinion of Mr. Mahar, her expert meteorologist. Mr. Mahar opines that, on the day of Plaintiff's accident: (1) any measurable precipitation ended by 4:00 a.m.; (2) the wet grounds that resulted from the precipitation and snow melt froze into ice starting on December 27, 2016 sometime between 9:00 a.m. to 12:00 p.m., when the temperature dropped to 32 degrees and remained there and slowly fell through the afternoon of December 27, 2016

9

dropping to 28-31 degrees by 4:55 p.m.; and (3) ice did not continue to form through the time of Plaintiff's accident. (Dkt. No. 24-4, ¶¶ 18, 28–29, 35). Based on Mr. Mahar's opinion that only a trace amount of precipitation fell after 12:00 p.m. and that ice was not actively forming at the time of the accident, Plaintiff has raised an issue of fact as to the existence of a storm at the time of Plaintiff's accident. Further, Plaintiff has raised an issue of fact as to whether her fall was caused by a slippery condition the result of earlier weather conditions—based on Mr. Mahar's opinion that ice formed in the parking lot between 9:00 a.m. and 12:00 p.m. due to earlier rain and snow melt and the temperature falling below freezing during that time.[3] Accordingly, Defendant is not entitled to summary judgment on the storm in progress defense.

### B. Theories of Negligence

The Government also argues that it is entitled to summary judgment because it did not create or cause any dangerous icy condition in the parking lot and did not have any notice of it. (Dkt. No. 19-2, pp. 15–18). Plaintiff disputes these issues and argues that she is entitled to summary judgment because Defendant was aware of the recurring icy conditions and failed to properly inspect and maintain its premises. (Dkt. No. 20-1, pp. 10–15).

#### 1. Creation of Dangerous Condition

As discussed above, a plaintiff may prove negligence in a slip and fall case by showing that the defendant either created or had notice of a dangerous condition. Defendant asserts that "there is no evidence that USPS caused the patch of ice to develop" in the parking lot. (Dkt. No. 19-2, p. 15).

To establish that a defendant created a dangerous condition, the plaintiff must point to some affirmative act of negligence on the defendant's part. *Gonzalez v. Wal–Mart Stores, Inc.*,

---

[3] This evidence also raises an issue of fact as to whether Defendant had adequate time, from approximately 12:00 p.m. to 4:52 p.m., to address any icy conditions in the parking lot.

299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004) (citing *Fink v. Bd. of Ed.*, 117 A.D.2d 704 (2d Dep't 1986)). Moreover, "it is well settled that the 'mere failure to remove all snow and ice from a sidewalk . . . does not constitute negligence and does not constitute creation of a hazard,' and that the failure to salt or sand a sidewalk does not constitute an affirmative act that would constitute an exacerbation of a dangerous condition." *Glover v. Botsford*, 109 A.D. 3d 1182, 1184 (4th Dep't 2013) (citations omitted). "The mere fact that the record establishes that 'a thin layer of snow remained' on the area in question, standing alone, is insufficient to raise a question of fact as to whether defendants' snow removal efforts either created a hazardous condition or worsened the conditions then existing." *Gentile v. Rotterdam Square*, 226 A.D.2d 973, 974 (3d Dep't 1996) (citing *Herrick v. Grand Union Co.*, 1 A.D.2d 911 (3d Dep't 1956)).

Here, Plaintiff does not point to any affirmative act by Defendant that created the dangerous condition. (*See generally* Dkt. Nos. 1, 20-1, 24-2, 27). Rather, Plaintiff's allegations focus on Defendant's alleged failure to take the necessary remedial measures to prevent Plaintiff's injury, despite their alleged notice of a recurrent dangerous condition. (*Id.*). However, a defendant's "lack of 'general procedures' for snow removal and reliance on in-house employees for lot maintenance do not constitute 'affirmative acts' that can support a finding that defendant created [an] alleged[ly] dangerous condition[]." *Taylor v. Manheim Marketing Inc.*, No. 15-CV-1950, 2017 WL 5905544, at *3, 2017 U.S. Dist. LEXIS 197176, at *8–10 (E.D.N.Y. Nov. 30, 2017) (rejecting the plaintiff's claim that the defendant created the dangerous condition by permitting its property to become slick with unplowed snow). Plaintiff has failed to adduce any evidence of an affirmative act by the FPO, as opposed to an omission, that would permit a rational finding that Defendant created a dangerous condition. Accordingly, Plaintiff cannot sustain her negligence claim on this theory.

11

### 2. Constructive Notice[4]

Next, the parties dispute whether Defendant had constructive notice of any dangerous condition at the FPO parking lot. (Dkt. No. 19-2, pp. 15–17; Dkt. No. 20-1, pp. 10–13). Plaintiff asserts that Defendant had constructive notice because "Defendant[] know[s] that water runs off of its roof onto the sidewalk and then onto its parking lot," and "[d]espite this knowledge, [Defendant] does nothing to fix it and does nothing to treat its parking lot to prevent the formation of ice." (Dkt. No. 20-1, p. 12). Plaintiff adds that "Defendant had ample opportunity to discover the ice on the parking lot and it took no steps to inspect or remedy the dangerous condition." (*Id.*). In response, Defendant asserts that it did not have constructive notice because no one reported a dangerous icy condition in the parking lot on the relevant date, no ice was readily observable, and thus Defendant had no opportunity to remedy it. (*See* Dkt. No. 19-2, pp. 15–17; Dkt. No. 22, pp. 3–8).

For constructive notice, "a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Nat. History*, 67 N.Y.2d 836, 837 (1986). Further, "[a] 'general awareness' that a dangerous condition might be present is not sufficient to charge a defendant with constructive notice." *Harper v. United States*, 949 F. Supp. 130, 133 (E.D.N.Y. 1996) (quoting *Gordon*, 67 N.Y.2d at 838). However, "[a] defendant who has actual knowledge of an ongoing and recurring dangerous condition can be charged with constructive

---

[4] Defendant asserts that there is "no evidence that the [it] had actual notice of the existence of the patch of ice that allegedly caused plaintiff's fall." (Dkt. No. 19-2, p. 16). Specifically, Defendant claims that there is no evidence that anyone brought the ice patch to the FPO's attention, nor did Ms. Bouden observe ice when she opened or closed the FPO on the date of the accident. (*Id.*). Plaintiff appears to concede that Defendant did not have actual notice, and instead, only argues that Defendant had constructive notice. (*See* Dkt. No. 20-1, pp. 10–13; Dkt. No. 24-2, pp. 15–17). Upon review of the record, the Court agrees that there is no evidence that Defendant had actual notice of the alleged dangerous condition.

notice of each specific reoccurrence of the condition." *Brown v. Linden Plaza Hous. Co.*, 36 A.D.3d 742, 742 (2d Dep't 2007).

Here, Plaintiff has failed to adduce any evidence that the icy condition was visible and apparent. Indeed, Plaintiff testified that she did not notice any ice in the parking lot until after she fell, and she did not provide any description of the ice, beyond "slippery," to create an issue of material fact as to whether it was visible and apparent. (*See* Dkt. No. 20-3, pp. 20–21, 23). Further, there were no witnesses to Plaintiff's fall, and the pictures of the parking lot taken after the fact are inconclusive. Thus, even assuming there was ice in the parking lot, Plaintiff has failed to show that the dangerous condition was visible and apparent to put Defendant on notice. *See Citarella v. United States*, 86 F. Supp. 3d 151, 152 (E.D.N.Y. 2015) (granting summary judgment for the defendant after finding that the plaintiff could not demonstrate constructive notice where he "had a clear view of the ground, [and] . . . did not observe the ice prior to his fall"); *see also Watts v. Wal-Mart Stores East, LP*, No. 16-CV-4411, 2018 WL 1626169, at *5–7, 2018 U.S. Dist. LEXIS 54591, at *12–20 (S.D.N.Y. Mar. 29, 2018) (granting summary judgment to the defendant where the plaintiff did not see the dangerous condition until after her fall and failed to present evidence to raise a triable issue of fact as to whether the substance causing her fall was visible and apparent) (collecting cases).

Plaintiff also attempts to show constructive notice by arguing that Defendant should have been aware of the "recurrent" icy condition because of general complaints from customers about slippery conditions in the parking lot and employee observations of puddles and runoff from the roof. (Dkt. No. 20-1, pp. 7–8). However, these allegations are not specific enough to create an issue of fact as to whether Defendant was aware of a recurrent dangerous condition. Mere awareness of the general possibility of slippery conditions does not constitute constructive notice in this case. *See Harrison v. N.Y.C. Transit Auth.*, 113 A.D.3d 472, 477

(1st Dep't 2014) ("General awareness of below-freezing temperatures and the possibility that ice might form, without more, is insufficient to charge defendant with notice of the particular patch of ice on which plaintiff slipped."). There is no specific evidence that FPO employees knew that the puddles and runoff created a dangerous condition prior to Plaintiff's accident. In the absence of more concrete information showing reports of slippery conditions at the location of the fall, Plaintiff's recurring danger theory cannot survive summary judgment. *See Mosquera v. Orin*, 48 A.D.3d 935, 937 (3d Dep't 2008) (concluding that the "defendant's general awareness that small puddles occasionally formed in the pathway and that the pathway was sometimes slippery during the winter [was] not sufficient, in itself, to impute actual or constructive notice of any specific condition existing on the day of the accident").

In sum, Plaintiff has failed to show that Defendant had constructive notice of the alleged dangerous condition in the parking lot, and therefore, she cannot sustain a negligence claim based on her theories that Defendant had constructive notice due to a visible and apparent and/or recurring problem. *See Brisbois v. United States*, No. 03-CV-1214, 2005 WL 1331129, at *5–7, 2005 U.S. Dist. LEXIS 48174, at *17–22 (N.D.N.Y. June 1, 2005) (granting summary judgment where the plaintiff failed to present evidence that the danger was apparent, and also failed to demonstrate the defendant had notice of a recurring dangerous condition); *see also Fay v. Bass Hotels and Resorts, Inc.*, No. 00-CV-9107, 2003 WL 21738967, at *4–8, 2003 U.S. Dist. LEXIS 12888, at *11–27 (S.D.N.Y. July 28, 2003) (granting summary judgment where the plaintiff failed to demonstrate constructive notice because there was no evidence that the condition was visible and apparent, and there was no evidence that the alleged recurrent condition was the cause of her fall).

14

### 3. Failure to Inspect

Alternatively, Plaintiff argues that she is "entitled to summary judgment under the failure to inspect theory." (Dkt. No. 20-1, pp. 13–15). Plaintiff states that "although the adequacy of Defendant's inspection is generally a question of fact, Defendant admits that it does not inspect its premises after 12:00 p.m. even though it is open until 7:00 p.m.," and further, that "it is undisputed that any 'inspections' of the parking lot are unreasonable as a matter of law because [Defendant] does nothing to address any ice in the parking lot." (*Id.*, p. 14). Plaintiff claims that "[h]ad Defendant inspected the parking lot, it would have noticed the icy conditions and it could have applied salt to remedy the icy conditions." (*Id.*, p. 15).

In response, Defendant suggests that "Plaintiff's theory of liability on failure to inspect is premised upon a hypothetical leap of faith." (Dkt. No. 22, p. 5). Defendant claims that Plaintiff's argument fails because "there is no evidence that there was ice in the area that [P]laintiff claim she fell," and she "offers no case law to support the existence of such a 24/7 duty on the part of business owners." (*Id.*). Defendant also points out that Plaintiff admitted that she "did not pay attention to the conditions of the parking lot, she did not experience any difficulty in walking into the FPO nor when she walked out, until she fell," and therefore, "[P]laintiff failed to submit any proof that an inspection of the parking lot would have found an unspecified patch of ice . . . ." (*Id.*, p. 6).

Notably, some courts have determined that "the issue of actual or constructive notice is irrelevant where defendant had a duty to conduct reasonable inspections of the premises and failed to do so." *Bryndle v. Boulevard Towers, II, LLC*, 132 F. Supp. 3d 486, 500 (W.D.N.Y. 2015) (quoting *Tuthill v. United States*, 270 F. Supp. 2d 395, 400–01 (S.D.N.Y. 2003)); *see also Watson v. City of New York*, 184 A.D.2d 690, 690 (2d Dep't 1992) (citing *Meyer v. State of New York*, 403 N.Y.S.2d 420 (1978) (holding that "[w]here there is a failure to inspect,

15

constructive notice need not be proved")). Other courts have held that constructive notice maybe imputed to a landowner if the dangerous condition would have been discovered through reasonable inspection. *See Lacey v. Target Corp.*, No. 13-CV-4098, 2015 WL 2254968, at *5–6, 2015 U.S. Dist. LEXIS 62643, at *13–14 (E.D.N.Y. May 13, 2015). In other words, a plaintiff can establish constructive notice through an alternative theory that the defendant failed to perform a reasonable inspection. Applying the above authorities in this case, the Court finds that there is a genuine issue of material fact as to whether Defendant failed to reasonably inspect and maintain the parking lot.

New York common law obligates property owners to use reasonable care to inspect and repair common areas. *Williams v. Matrix Fin. Servs. Corp.*, 158 F. App'x 301, 303 (2d Cir. 2005) (quoting *Wynn ex rel. Wynn v. T.R.I.P. Redevelopment Assocs.*, 296 A.D.2d 176, 181 (3d Dep't 2002)). However, landowners are not expected to continuously patrol their premises twenty-four hours a day, even where a problem is recurrent. *Pfeuffer v. N.Y.C. Housing Auth.*, 93 A.D.3d 470, 472 (1st Dep't 2012). Rather, "[t]he duty of landowners to inspect their property is measured by a standard of reasonableness under the circumstances." *Anderson v. Justice*, 96 A.D.3d 1446, 1447 (4th Dep't 2012) (citations omitted). As such, the adequacy of a property owner's inspections is generally a determination reserved for the fact finder. *Wynn*, 296 A.D.2d at 182 (3d Dep't 2002) (citations omitted).

Here, the record shows that FPO employees shoveled and salted the sidewalks at the beginning and end of every shift. (Dkt. No. 19-6, pp. 20–23). FPO employees also inspected the sidewalks regularly throughout each shift and performed snow and ice removal "as needed." (*Id.*, p. 23; Dkt. No. 19-7, pp. 17, 41). However, Ms. Bouden testified that she was not aware of any procedures requiring FPO employees to inspect the parking lot area for snow and ice. (Dkt. No. 19-6, pp. 27–28). She did not salt the parking lot on the day of Plaintiff's

16

accident, and she had never salted the parking lot on any other occasion. (*Id.*, p. 27).

Similarly, Mr. Davison confirmed that it was the regular custom and practice for FPO employees to salt the sidewalks, but not the parking lot. (Dkt. No. 19-7, p. 19). He testified that FPO employees are only required to "make sure that the snow has been removed," but noted that "there's no procedures for removing the ice." (*Id.*, pp. 41–42). Mr. Davison also admitted that there are no procedures for inspecting the FPO's sidewalks and parking lot after the customer service counter closed at 12:00 p.m., even though the lobby remained open to the public until 7:00 p.m. (*Id.*, p. 34). The record shows that the FPO's snow plow service never salted the parking lot, and only plowed the parking lot when there was three to four inches of accumulation. (*Id.*, pp. 14–15).

Thus, it is undisputed that FPO employees did not conduct any inspections after 12:00 p.m. on December 27, 2016—roughly five hours before Plaintiff's accident. It is also undisputed that the FPO had no procedures for removal or remediation of ice that formed in the parking lot. Plaintiff claims that the Defendant's snow and ice procedures were "unreasonable as a matter of law," but she has not offered any legal support for her theory that the failure of a landowner to salt its parking lot is somehow per se negligence. To the contrary, assessing a Defendant's failure to inspect and maintain its property is a highly fact-specific inquiry that must be resolved by the finder of fact. *See, e.g.*, *Silverman v. United States*, No. 04-CV-5647, 2008 WL 1827920, at \*17–18, 2008 U.S. Dist. LEXIS 25041, at \*50–55 (E.D.N.Y. Mar. 28, 2008) (rejecting the plaintiff's failure to inspect theory only after conducting a bench trial and making detailed findings of fact).

Simply put, there is an issue of material fact as to whether Defendant's inspections and maintenance were reasonable under the circumstances. Although the FPO had established procedures for inspecting and removing snow and ice from the sidewalks around the building,

the record shows that the FPO relied on the snow plow service to remove snow from the parking lot, without any additional measures for ice. Whether or not these practices were reasonable is a question to be decided by the fact finder. Further, the fact that Plaintiff did not personally notice ice in the parking lot before the accident does not foreclose the possibility that it may have been discovered upon a reasonable inspection. *See Derosia v. Gasbarre & Szatkowski Ass'n*, 66 A.D.3d 1423, 1424 (4th Dep't 2009) (reversing dismissal of the plaintiff's negligence claim, finding that the "defendants failed to establish that the ice was not visible upon a reasonable inspection").

Accordingly, Plaintiff is not entitled to summary judgment on her failure to inspect theory of negligence, which must be proven at trial.[5] *See Bryndle*, 132 F. Supp. 3d at 500–02 (denying summary judgment where fact issues existed as to whether the defendant's inspection practices were reasonable); *Tuthill*, 270 F. Supp. 2d at 400–01 (same).

## V. CONCLUSION

For these reasons it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. No. 19) is **GRANTED in part and DENIED in part**, as discussed herein; and it is further

**ORDERED** that Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 20) is **DENIED**; and it is further

**ORDERED** that Plaintiff may proceed to trial on her negligence claim based on the failure to inspect theory; and it is further

---

[5] Because there are issues of material fact as to the circumstances of Plaintiff's fall and whether Defendant's inspection and maintenance practices were reasonable, the Court declines to address Defendant's argument as to proximate cause, (Dkt. No. 19-2, pp. 17–18), which cannot be resolved as a matter of law at this time. *See Gerfin ex rel. Gerfin v. N. Colonie Cent. Sch. Dist.*, 41 A.D.3d 1085, 1086–87 (3d Dep't 2007) (stating that "the fact that other causes might exist for plaintiff's fall establishes a question of fact as to proximate cause which must be resolved by a trier of fact").

**ORDERED** that the Clerk of the Court is directed to provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York; and it is further

**ORDERED** that the Clerk of the Court is directed to confer with the parties to schedule a status conference in preparation for trial.

**IT IS SO ORDERED.**

Date:   February 14, 2020
        Syracuse, New York

*Norman A. Mordue*
Norman A. Mordue
Senior U.S. District Judge